JOSEPH FISCHER AS LIQUIDATING AGENT OF SCHMOLL FILS ASSD.,
INC., ET AL. *v.* UNITED STATES

**No. 6950.**—Invoices dated Buenos Aires, Argentina, June 23, 1938, etc.
Certified June 23, 1938, etc.
Entered at New York, N. Y., July 27, 1938, etc.
Entry No. 2138, etc.

## Second Division, Appellate Term

(Decided March 4, 1947)

*Barnes, Richardson & Colburn* (*Samuel M. Richardson* and *Hadley S. King* of counsel) for the appellants.

*Paul P. Rao,* Assistant Attorney General (*Daniel I. Auster,* special attorney), for the appellee.

Before TILSON, KINCHELOE, and COLE, Judges; COLE, J., dissenting

TILSON, Judge: This application, filed under the provisions of section 501 of the Tariff Act of 1930, seeks a review of the decision of the trial court in finding the appraised values to be the proper dutiable values of certain imported hides. This case, as originally submitted before the late Judge Walker, involved 188 appeals, all of which were dismissed by him upon the ground that appellants had failed to establish a *prima facie* case (Reap. Dec. 5614). In due course an application for a review of that decision was filed before the second division, and as to all of said cases, except five, the division reversed the decision of the trial court and remanded the cases to it for the purpose of finding a value for the merchandise (Reap. Dec. 5881). As to five of the appeals, the division found that there had been no appraisement of the merchandise by the appraiser and directed that they be returned to the collector for the purpose of having the merchandise appraised in accordance with law.

Thereafter an appeal was taken to the Court of Customs and Patent Appeals, and the five appeals in which no appraisement had been made were included. In disposing of the case, the appellate court held as follows (*United States* v. *Joseph Fischer et al.,* 32 C. C. P. A. 62):

As to the appraisements made subsequent to the effective date of the Customs Administrative Act, amending section 501 of the Tariff Act of 1930 (July 25, 1938) it clearly was the duty of the trial court under the provisions of the statute, whether the appraisements were valid or invalid, although no evidence was submitted at the trial, to determine the value of the merchandise covered by those appraisements from "'the evidence in the entry record'," as held by the appellate division of the Customs Court.

As to the 75 reappraisements covering merchandise which was appraised prior to the effective date of the Customs Administrative Act, amending section 501 of the Tariff Act of 1930, we are in agreement with the views expressed by the trial court that there is nothing in the record to indicate that the method adopted by the appraiser did not result in correctly ascertaining or estimating the dutiable values of the merchandise. We are of opinion that the court properly dismissed those appeals for reappraisement. * * *

With reference to the five so-called appeals in which no appraisement had been made, we stated in our decision (Reap. Dec. 5881):

We also find from the record before us that in five so-called appeals, listed in schedule B, hereto attached and made a part hereof, the appraiser has failed to make an appraisement of the merchandise. Why these papers were forwarded by the appraiser's office to the collector's office before the merchandise was appraised, and how the collector was able to determine the percentage of increase of the appraised value over the entered value when the appraiser had never estimated or ascertained the value of the imported merchandise are matters with which we are not here concerned. * * *

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

The judgment of the trial court covering the so-called appeals listed in said schedule B is also reversed and the so-called appeals are remanded to the trial court with instructions to return the same to the collector for the purpose of having the merchandise appraised in accordance with law. * * *

In disposing of the case, our appellate court failed to recognize or give any consideration to our holding hereinbefore set out with reference to the five so-called appeals in which no appraisement had been made, but treated them as appeals as to which the importer had failed to make a *prima facie* case, and included them among those as to which it affirmed the decision of the trial court in dismissing them for failure of proof. In returning the case to the trial court, this division followed strictly the mandate of the appellate court. However, the trial court recognized its inability to find a value for the merchandise covered by these five so-called appeals, and returned them to the collector with instructions to have appraisements made in accordance with law. This action of the trial court appears to be the only correct action it could take, although it is not in accordance with the decision of our appellate court.

Counsel for the appellant complains of the action of the trial court in denying a motion for rehearing and in failing to place these cases upon the calendar and affording the parties an opportunity to be heard on the merits, and then determining the value of the merchandise from the evidence in the entry record and that adduced at the hearing.

An examination of the record fails to disclose any error on the part of the trial court in denying the motion for a rehearing or in refusing to place the cases upon the calendar and affording the parties an opportunity to be heard on the merits. However, for the reasons hereinafter stated, it does appear that the trial court should have placed the

cases upon the docket for the purpose of securing evidence as to the basis of appraisement, in order that it might find one of the legal statutory values for the merchandise as provided in section 402 of the Tariff Act of 1930.

Section 501 of the Tariff Act of 1930 provides, in part, that:

* * * The value found by the appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

In enacting this provision the Congress certainly presumed that in finding a value for imported merchandise the appraiser would follow and be governed by the provisions of section 402 of said act and find one of the values specified in section 402. Until the appraiser has complied with the statute in appraising merchandise, he has not found a value of any kind, presumptively correct or otherwise.

In this case, on the "Summary of Examination and Appraisement," under the heading "Appraised" there is written in red ink the word "Value." On the invoice is stamped in red ink "APPRAISER ADDS FOR SHRINKAGE AFTER EXPORTATION." Also on a slip of white paper attached to the foot of the invoice appears "APPRAISER ADDS FOR SHRINKAGE AFTER EXPORTATION 1.98968 per 100 kos." And we are asked by appellee to apply to this action of the appraiser the above-quoted provision of section 501, and hold such action to be presumptively correct. In our view, the above action of the appraiser falls so far short of a legal appraisement contemplated by the Congress in enacting section 402 that the above-quoted portion of section 501 can have absolutely no application thereto.

Section 402 of the Tariff Act of 1930 provides as follows:

**SEC. 402. VALUE.**

(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

(4) In the case of an article with respect to which there is in effect under section 336 a rate of duty based upon the American selling price of a domestic article, then the American selling price of such article.

(b) Review of Appraiser's Decision.—A decision of the appraiser that foreign value, export value, or United States value can not be satisfactorily ascertained shall be subject to review in reappraisement proceedings under section 501 * * *

In subsections 402 (c), (d), (e), (f), and (g) we find congressional definitions of the respective values which the Congress has set up as the basis for all appraisements of imported merchandise.

If the appraiser of merchandise is to be relieved of the duty of finding and also indicating the basis of his appraisement, that is, foreign value, export value, United States value, cost of production, or American selling price, then the act of Congress in enacting this basis of appraisement would appear to be almost an idle gesture. And unless the appraiser indicates in some manner on some of the official papers the basis of his appraisement, no one will ever know whether or not he has found one of the statutory values required by section 402, or if so, which one. If the Congress had not intended that the appraiser should find and indicate the basis of his appraisement as set out in section 402 (a) (1), (2), (3), and (4), then it would not have provided in section 402 (b) that "A decision of the appraiser that foreign value, export value, or United States value can not be satisfactorily ascertained shall be subject to review in reappraisement proceedings under section 501."

By section 402 (b) the Congress has given an importer a specific right of action against the Government to file an appeal against the decision of the appraiser that foreign value, export value, or United States value cannot be satisfactorily ascertained. In order for an importer to take advantage of this specific right of action against the Government, the importer must be advised in some manner the statutory basis of the value of the merchandise found by the appraiser. This right of action is not to be denied the importer by the failure or refusal of the appraiser to indicate in some manner the basis of his appraisement.

In *Joseph Fischer et al.* v. *United States*, Reap. Dec. 5881, we said:

However, the fact that said amended regulation does not require the appraising officer to indicate upon the invoice the basis of his ascertained or estimated value does not relieve the appraiser, or the appraising officer, from complying with section 402 by indicating upon the invoice or other official papers the basis of the actual figures which he ascertains or estimates to be the value of the merchandise, to wit: foreign, export, or United States value, cost of production, or American selling price. The basis of appraisement lies at the very threshold of any action taken by the appraising officer in ascertaining or estimating the value of imported merchandise. It is an integral and inseparable part of such action. In our opinion, it was never the intent of the Congress in enacting section 402 to permit the appraising officer to place a figure or set of figures upon the invoice or official papers, and then leave it to those who were bound by such figure or figures to guess whether such figure or figures represented foreign, export, or United States value, cost of production, or American selling price.

\*        \*        \*        \*        \*        \*        \*

Considering the small amount of labor required to place upon the official papers the proper letters indicating the basis of appraisement, after the same has already been determined by the appraising officer, in comparison with the benefits which would flow therefrom, there would appear to be little, if any, excuse for not furnishing this information, even in the absence of a statute requir-

ing it. If the amendment of subparagraph (*t*) of article 776 of the Customs Regulations of 1937 were intended to avoid furnishing such information, in violation of the appraisement statutes, such action contravenes the statute and is void. The statute requires this information, and the appraising officer must furnish the same or have his appraisement held erroneous and thereby invite himself to be called to testify before this court in each appraisement that is appealed.

In view of the statute hereinbefore quoted, and from what has heretofore been stated, it is our view that it is just as much a part of the duty of the appraiser under the law in finding the value of imported merchandise to indicate upon the official papers the *basis* of the value of imported merchandise as it is for him to place upon the official papers the figure or figures which he estimates or ascertains to be the value of the merchandise.

In the present case the trial court stated: "I find the proper values of the merchandise covered thereby to be the values found by the appraiser." So far as we have been able to ascertain, there is absolutely nothing on or connected with the official papers to indicate the basis of values found by the appraiser. Therefore, a finding that "the proper values of the merchandise * * * are the values found by the appraiser" is not a finding of any statutory value required by section 402. With regard to this phase of the case we stated in our former decision:

* * * We are not assuming that counsel for the importer or counsel for the Government would decline or refuse to comply with a suggestion or direction of the court to produce sufficient evidence to enable the court to perform its mandatory duty under the law, but in any event, the court, being entitled to sufficient evidence to enable it to find a value for the imported merchandise, has the power and authority to secure such evidence. * * * In the instant case the one thing the court needs to enable it to find a legal statutory value for the merchandise is to know the basis of appraisement, and to secure this information the court has the power and authority to call the appraiser, and, if need be, require the appraiser to give testimony concerning that matter.

It is quite clear from the decision and judgment now before us for review that the trial court failed to give proper heed to the above observations. To the end that this be accomplished, the decision and judgment of the trial court are reversed, and the case is remanded to the trial court for further action not inconsistent with the views herein expressed. Judgment will be rendered accordingly.

### DISSENTING OPINION

Cole, Judge: While I am in sympathy with the objective sought to be accomplished by the majority, i. e., to require, if possible, the appraiser to indicate upon the official papers what particular statutory value he found in his official appraisement, I most respectfully disagree with the conclusions reached herein.

The majority opinion upholds the action of the trial court in denying plaintiff's motion to restore the cases to the calendar for a *de novo* appraisement by the court, thereby affirming the consideration of the case by the trial judge, as following the intent of the mandate of the appellate court. However, the decision then continues with a discussion of the proposition, concerning the action of the appraiser and the omission of a notation on the official papers showing the statutory value adopted in appraising the merchandise. This is the identical point so very thoroughly discussed by the second division in its earlier decision, *Joseph Fischer et al.* v. *United States*, 11 Cust. Ct. 329, Reap. Dec. 5881, reviewed by the Court of Customs and Patent Appeals, *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. 62, C. A. D. 286. As a matter of fact, one of the assignment of errors (number 5) presented to the Court of Customs and Patent Appeals related to the conclusions of law reached by the appellate division of this court in its reference to the duties of an appraiser in ascertaining the value of imported merchandise.

Following its discussion in Reap. Dec. 5881, *supra*, with respect to what the appraiser did or did not do in finding the value of the instant merchandise—emphasizing particularly his failure to indicate the statutory value his figures represent—the second division, as the appellate tribunal reviewing the decision of the late Judge Thomas J. Walker, in *Joseph Fischer et al.* v. *United States*, 8 Cust. Ct. 678, Reap. Dec. 5614, made the following significant statement:

> While we are not prepared to hold that an appraisement wherein the basis thereof does not appear is illegal, null and void, we must, and do hereby hold that such an appraisement is erroneous.

There is further significance attached to the following statement made by the Court of Customs and Patent Appeals in its decision, C. A. D. 286, *supra:*

> As we understand its decision, the appellate division of the Customs Court held that the appraisements by the local appraiser, while erroneous, were not illegal and void.

There can be no doubt that the procedure followed by the appraiser in making his official finding in the present case was definitely a part of the record before the appellate court, and the very point now raised and given controlling influence by the majority was previously presented with the same force and effect as it is here offered. In fact, most of the language assigned to support the present disposition of the 113 appeals affected thereby, is identical with that which was actually and properly before the appellate court at the time of its decision, said C. A. D. 286. The Court of Customs and Patent Appeals did not direct that these appeals be remanded for additional proof clarifying the appraiser's official action.

Regardless of how advisable it appears to be for appraisements, in cases such as this record presents, to disclose to the court what particular statutory value the applied figures were intended to support, and my complete agreement with such procedure in all appraisements I do not believe the opportunity to do that in this case is any longer available. I quote from the opinion of the Court of Customs and Patent Appeals, C. A. D. 286, *supra*.

We are of opinion that, although the values returned by the local appraiser may not be correct, he had the authority to appraise the merchandise *in its condition* as imported in the unit of quantity in which such or similar merchandise is usually bought and sold in the country of exportation by estimating the shrinkage thereof from the time of exportation to the time of importation, if, by so doing, the dutiable values might be properly ascertained. We know of no statute or regulation which prohibits such action on the part of the appraiser. *Furthermore, there is nothing whatsoever in the record to indicate that the values returned by the appraiser are not the proper dutiable values of the merchandise.* [Italics added in last sentence.]

Should the trial judge proceed as the majority directs, it is conceivable that no additional testimony would become available, and it is likewise conceivable that if additional testimony, as suggested, be furnished, it would supply nothing whatever to change the money value found by the appraiser, which has been adjudicated and finally upheld by the appellate court, but simply enter as a part thereof which of the values defined in section 402 of the Tariff Act of 1930, as amended (19 U. S. C. § 1402), the appraiser had in mind. Such an addition to the record by the appraiser at this time cannot affect appraised values heretofore found and, as I have stated, subsequently adjudicated as correct.

It is my opinion, therefore, that the trial judge acted correctly in determining the values of the merchandise covered by the appeals relating to appraisements made after the effective date of the Customs Administrative Act of 1938 (July 25, 1938).

As to the five cases in which no appraisement was made and which the trial judge has dismissed as "premature," ordering that "the papers will be returned to the collector for the purpose of having the merchandise appraised in accordance with the law," the opinion of the majority comments that such action "is not in accordance with the decision of our appellate court." It can hardly be disputed that the said 5 cases were erroneously included in the 75 ordered by the appellate court to be dismissed for reasons assigned in its opinion, but that they should be dismissed for the reason assigned by the trial judge.

The judgment of the trial court should be affirmed.